The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award.
 *************
The Full Commission finds as fact and concludes as matters of law, the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff-employee and defendant-employer.
3. Plaintiff's average weekly wage at the time of the alleged incident was $762.80.
 *************
Based upon the findings of fact found by the Deputy Commissioner, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff began her employment with defendant-employer on October 3, 1994 as a furniture saleswoman on a trial basis. At that time, plaintiff was a 45 year old woman who had been smoking one pack of cigarettes per day for over twenty years.
2. On December 15, 1994, a shipment of new pine tables was received by defendant-employer from a company called Bucks County Furniture Company. Also, around December 15, defendant-employer had begun simmering cinnamon potpourri in the store's showroom to create a holiday environment for the employees and customers. Plaintiff complained about the smell of both the new tables and the potpourri to Mr. Flowers, Ms. Harris and Ms. Kathy McElroy.
3. On the afternoon of December 15, 1994, plaintiff noticed a strange odor in the store. She began to feel dizzy and nauseous.
4. The next day, plaintiff worked for a few hours when she noticed her lip and throat began to swell and she found it difficult to breath.
5. Plaintiff told her co-workers that she was having an attack because of the smell of the new tables. Ms. McElroy helped plaintiff out of the store and took her to Harrisburg Family Physicians. Plaintiff told the doctor at Harrisburg Family Physicians that she went into work, noticed a strange smell, and began to have swelling of her lip and a full feeling in her tongue. Plaintiff told the physician that "she has had this happen before."
6. Plaintiff had previously told at least one co-worker, Ms. Debra Thomas, that she had many allergies and that she was more sensitive than most people.
7. Plaintiff tried to come back to work the next day, but she had another reaction.
8. One day later, on December 18, 1994, plaintiff was shopping in a mall when she had another reaction in the perfume department of Belks. EMS came and transported plaintiff to the Emergency Room at Cabarrus Memorial Hospital. Plaintiff told the EMS technician that she was allergic to "most everything", and she told the emergency room physician that she was allergic to "almost everything."
9. On December 20, 1994, plaintiff presented to the Hughes Clinic in Concord. She was examined by a physician assistant, who reported that plaintiff informed her that she had "an extensive hx (history) of allergic-type problems," and that she has had "attacks in the past where her throat, tongue and lips would swell when she was using household cleaners or exposed to chemicals."
10. Thereafter, on December 23, 1994, plaintiff presented to Dr. Richard Collins, an allergy and immunology specialist. Plaintiff had experienced recurrent angioedema or bronchospasm with various odors, including varnish, lacquer, new pine furniture, cologne, and hair spray. Dr. Collins notes also reveal that plaintiff informed him that "similar reactions also occur with cinnamon." Upon further inquiry, Dr. Collins also included in his notes that plaintiff reported past allergic swelling to Clorox, formaldehyde and ivory clear liquid.
11. At the hearing, before the Full Commission or Deputy Commissioner, plaintiff testified that she had never before experienced the symptoms she had on December 16, 1994. Based upon the inconsistencies between plaintiff's testimony and the medical records, the undersigned concludes that plaintiff's testimony in this regard is not credible.
12. A report prepared by an OSHA investigator, Mr. Thomas White, after an unannounced visit to defendant-employer was introduced at the hearing. The report shows that air flow currents in the showroom were approximately 25 to 50 feet per minute, and that no chemical off-gassing was detected from the Bucks County tables.
13. Soil Shield is a fabric protector that was sold as an additional service to customers after a piece of furniture was purchased. Soil Shield was not used on pieces of furniture in the showroom and was only sprayed on furniture awaiting delivery to customers.
14. Defendant-employer's practice was to spray the furniture between 7:30 a.m. and 9:00 a.m., so that the furniture would dry by the time it was ready to be loaded on the trucks for delivery. Soil Shield was sprayed perhaps twice or three times a week, but not every week.
15. Ninety-eight percent (98%) of the time the spraying was done away from the store and close to the truck loading area. A large pull down door led from the outside of the building to a breezeway, which was followed by another set of double, swinging doors leading to the showroom. While the furniture was being sprayed outside, usually at least one of these two sets of doors was closed. Occasionally, if the weather was wet, the furniture was sprayed under an awning just outside the building.
16. The OSHA investigator did not find any safety violation in how the Soil Shield was being used at Flowers Furniture.
17. There was no evidence presented that Soil Shield was sprayed anywhere at Flowers Furniture when plaintiff had her reaction.
18. Dr. Richard E. Collins testified that the substances contained in the lacquers used on the Bucks County furniture caused plaintiff to contract multiple chemical sensitivities syndrome (MCS). Dr. Collins refused to testify that plaintiff's employment placed her at an increased risk of developing MCS versus the general public.
19. Dr. Woodhall Stopford, a non-treating physician, who never examined plaintiff, testified that dimethoxymethane contained in the soil shield "could or might" have given rise to plaintiff's angioedema, a symptom diagnosed by Dr. Collins.
20. Dimethoxymethane is a formaldehyde derivative that may release formaldehyde in wet, moist environments. According to the MSDS sheet for Soil Shield, dimethoxymethane made up as little as 1% of its contents, or as much as 10% depending on the batch.
21. Dr. Stopford did not know what concentration of dimethoxymethane would cause an allergic reaction. He also did not know what levels of dimethoxymethane plaintiff may have been exposed to at defendant-employer's, and did not take any tests or samples of the air at defendant-employer's.
22. Dr. Adams opined that based upon the evidence of record, Soil Shield did not, within a reasonable degree of medical certainty, cause any formaldehyde allergy or place plaintiff at an increased risk of developing any such allergy than the general public.
 *************
Based on the foregoing Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to prove by the greater weight of the credible evidence of record that she has contracted an occupational disease due to causes and conditions characteristic of her employment. The evidence shows that plaintiff had numerous allergies and has failed to prove that her employment with defendant-employer placed her at an increased risk of developing the above-described allergies than the general public not so employed. N.C.G.S. § 97-53(13).
 *************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 ORDER
1. Plaintiff's claim under the law must be and is hereby denied.
2. Each side shall pay its own costs.
This the ___ day of August 1998.
 S/ ________________________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ CHRISTOPHER SCOTT COMMISSIONER